IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| HELEN EASTWOOD,<br>    Plaintiff, | )<br>)<br>) |
| v. | ) Civil No. 3:15cv156 (REP) |
| | ) |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br>    Defendant. | )<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

On July 6, 2010, Helen Eastwood ("Plaintiff") applied for Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from cerebral vascular disease, hypothyroidism, hypertension, obstructive sleep apnea, narcolepsy, chronic kidney disease, calculus of gallbladder, non-alcoholic liver disease, panic attacks/stress and migraines, with an alleged onset date of September 25, 2008. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred by failing to: include all of Plaintiff's psychological limitations in his residual functional capacity ("RFC") assessment; find that Plaintiff meets Listing 12.05C of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, properly assess Plaintiff's credibility. (Mem. in of Point and Authorities in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem")(ECF No. 15) at 25-34.)

This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment.[1] For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No.13) be DENIED, that Plaintiff's Motion for Remand (ECF No. 14) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 17) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

### I. PROCEDURAL HISTORY

On July 6, 2010, Plaintiff applied for SSI, with an alleged onset date of September 25, 2008. (R. at 154-58, 171.) The SSA denied these claims initially on May 17, 2011, and upon reconsideration on December 15, 2011. (R. at 68-84.) At Plaintiff's written request, the ALJ held a hearing on June 26, 2013. (R. at 31.) On July 26, 2013, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 21-22.) On February 3, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner subject to review by this Court. (R. at 1.)

### II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v.*

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

*Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (summarizing the ALJ's five step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the ALJ determines whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R.

§ 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. 20 C.F.R. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On June 26, 2013, the ALJ held a hearing during which Plaintiff (represented by counsel) and an impartial vocational expert ("VE") testified. (R. at 31-67.) On July 26, 2013, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 11-22.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 11-13). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 6, 2010. (R. at 13.) At step two, the ALJ found that Plaintiff had the severe impairments of seizures, headaches, hernia repair, coronary artery disease, peripheral vascular disease, hypothyroidism, hypertension, hypercholesterolemia, depression and anxiety. (R. at 13.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff had the RFC to perform less than a full range of light work as defined in 20 C.F.R. § 416.967(b). (R. at 16.) Plaintiff could lift, carry, push and pull twenty pounds occasionally and ten pounds frequently. (R. at 16.) Plaintiff could stand and/or walk four hours in an eight-hour workday and sit six or more hours

in an eight-hour workday. (R. at 16.) Plaintiff could occasionally climb, but not ladders, ropes and scaffolds. (R. at 16.) Plaintiff could frequently balance, stoop, kneel, crouch and crawl. (R. at 16.) Plaintiff could not tolerate exposure to hazards such as unprotected heights or moving machinery. (R. at 16.) Plaintiff could use commonsense understanding to perform instructions provided in oral, written or diagrammatic form, consistent with a range of unskilled work at reasonable level three as defined in the Dictionary of Occupational Titles ("DOT"). (R. at 16.) Plaintiff could perform low stress jobs — defined as jobs not performed at an assembly-line pace, with few workplace changes, little independent decision-making and no responsibility for the safety of others. (R. at 16.) Plaintiff could work with the general public and co-workers occasionally and superficially. (R. at 16.)

At step four, the ALJ found that Plaintiff could not perform her past work. (R. at 21.) At step five, the ALJ determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy — as a document preparer with 410,000 positions nationally, as a touchup screener[2] and as an addresser with 60,000 positions nationally. (R. at 21-22.) Therefore, the ALJ found that Plaintiff did not qualify as disabled under the Act. (R. at 22.)

IV. ANALYSIS

Plaintiff, fifty-one years old at the time of this Report and Recommendation, previously worked as a waitress, a cook and a cashier. (R. at 190.) She applied for SSI, alleging disability from cerebral vascular disease, hypothyroidism, hypertension, obstructive sleep apnea, narcolepsy, chronic kidney disease, calculus of gallbladder, non-alcoholic liver disease, panic

---

[2] The VE did not give an approximate number of touchup screeners in the national economy during the hearing, and the ALJ did not include the number in his opinion. However, such omission does not change the ALJ's or this Court's analysis, because two other jobs that Plaintiff could perform — a document preparer and an addresser — exist in significant numbers in the national economy.

5

attacks/stress and migraines, with an alleged onset date of September 25, 2008. (R. at 171, 181.) Plaintiff argues that the ALJ erred by failing to: include all of Plaintiff's psychological limitations in his RFC assessment; find that Plaintiff meets Listing 12.05C of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, properly assess Plaintiff's credibility. (Pl.'s Mem. at 25-34.) For the reasons set forth below, the Court finds that ALJ did not err in his decision.

### A. The ALJ properly accounted for Plaintiff's psychological limitations in his RFC assessment.

Plaintiff argues that the ALJ erred in failing to include all of Plaintiff's psychological limitations, namely her limitations for pace, concentration and persistence. (Pl.'s Mem. at 25-30). Defendant responds that substantial evidence supports the ALJ's RFC assessment, and that the ALJ adequately accounted for Plaintiff's limitations in concentration, persistence and pace. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") (ECF No. 17) at 13-15.)

After step three of the analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC — the most that the claimant can perform despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.920(e)-(f), 416.945(a)(1). The ALJ must first assess the nature and extent of the claimant's physical and mental limitations, and then determine the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b)-(c). The ALJ's RFC assessment must incorporate impairments supported by the objective medical evidence in the record and those based on the claimant's credible complaints. 20 C.F.R. §§ 404.1545(a)(3), 404.1545(e). The ALJ uses the RFC assessment to determine if the claimant can perform her past relevant work and if she can adjust to any other work existing in the national economy. 20 C.F.R. § 404.1545(a)(5). When determining whether the claimant could perform other work in the national economy, the ALJ utilizes the testimony of a VE responding to hypothetical questions that incorporate the

claimant's RFC. *Mascio*, 780 F.3d at 635. Only when the hypotheticals posed represent all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.).

With regard to the claimant's mental impairments, if the ALJ finds that the claimant has moderate difficulties in maintaining her concentration, persistence or pace, the ALJ must account for such limitation in the RFC assessment and in his hypothetical to the VE. *Mascio*, 780 F.3d at 638. The ALJ does not account "for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question [to the VE] to simple, routine tasks or unskilled work." *Id.* (citing *Witschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). Instead, the ALJ must do more, because the ability to perform simple tasks differs from the ability to stay on task, and only the ability to stay on task would account for a claimant's limitation in concentration, persistence or pace. *Mascio*, 780 F.3d at 638.

In this case, the ALJ found that Plaintiff had moderate difficulties with regard to concentration, persistence or pace. (R. at 15.) The ALJ found that Plaintiff had the RFC to perform less than a full range of light work, with certain limitations. (R. at 16.) The ALJ limited Plaintiff to low stress jobs — defined as jobs not performed at an assembly-line pace, with few workplace changes, little independent decision-making and no responsibility for the safety of others. (R. at 16.) The ALJ incorporated all of his RFC findings into hypothetical questions to the VE. (R. at 59-60.) Because the RFC findings and the hypothetical questions posed to the VE match, the hypotheticals were "incomplete only if the ALJ failed to account for a relevant factor when determining [Plaintiff's RFC]." *Mascio*, 780 F.3d at 638. Plaintiff argues that the ALJ did not adequately account for Plaintiff's limitation in concentration and pace, but instead "simply

combined the pace and concentration limitations in a general restriction" like the ALJ did in *Mascio*. (Pl.'s Mem. at 29.) The Court disagrees.

Unlike the ALJ in *Mascio*, the ALJ here did more than restrict his hypothetical question to the VE to simple, routine tasks or unskilled work. The ALJ accounted for Plaintiff's persistence through the "few workplace changes" limitation, accounted for Plaintiff's concentration through the "little independent decision-making" limitation and accounted for Plaintiff's pace through the "assembly-line pace" limitation. *See Winschel*, 631 F.3d at 1180[3] ("[H]ypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations."); *see also Ford v. Colvin*, 2015 WL 5008962, *3 (E.D.N.C., Aug. 19, 2015) (holding that the ALJ sufficiently accounted for the claimant's persistence through "no constant change" limitations and for concentration through the "no loud noise limitation"). And the ALJ recounted Plaintiff's medical records in detail to explain the basis of his conclusions regarding Plaintiff's psychological limitations and RFC findings. (R. at 16-21.) Substantial evidence supports the ALJ's determination.

Plaintiff's medical records support the ALJ's decision that Plaintiff could perform low stress work as defined by the ALJ. On February 11, 2011, Kristiansson Roth, Ph.D. evaluated Plaintiff. (R. at 486.) Dr. Roth noted inconsistences between testing and performance in Plaintiff's mental status exam. (R. at 490.) He opined that fatigue likely influenced Plaintiff's performance and Plaintiff's mental health played a secondary role in her job-related functions.

---

[3] The Fourth Circuit relied on and quoted *Winschel* in *Mascio* when it held that the ALJ must do more than restricting a claimant to "simple, routine tasks or unskilled work" to account for her limitations in concentration, persistence and pace. *Mascio*, 780 F.3d at 638.

(R. at 490.) Plaintiff's medical condition played the primary role in her mental ability to adhere to a normal work schedule and maintain adequate pace in a work setting. (R. at 490.)

On March 1, 2012, and March 27, 2012, Salmaan Khawaja, Psy.D. evaluated Plaintiff during a neuropsychological examination. (R. at 609.) Dr. Khawaja noted that Plaintiff's neurocognitive function test generated abnormal and markedly impaired results. (R. at 610.) Dr. Khawaja opined that the results did not accurately reflect Plaintiff's day-to-day functioning, because otherwise she most likely could not perform her self-reported activities, such as driving and taking care of her young daughter. (R. at 611.) Dr. Khawaja also opined that Plaintiff's personality functioning assessments were invalid due to her high level of response inconsistences. (R. at 610.) Although Dr. Khawaja diagnosed moderate depression and severe anxiety disorder, he deferred his opinion as to cognitive difficulties. (R. at 611.)

A state agency psychologist's opinion also supports the ALJ's determination. On March 18, 2011, Lyndis Anderson, Ph.D. completed a mental RFC assessment for Plaintiff. (R. at 517-19.) After reviewing all medical evidence in the record, Dr. Anderson concluded that Plaintiff was not significantly limited in her ability to carry out short and simple instructions, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them and make simple work-related decisions. (R. at 517-18.) Dr. Anderson concluded that Plaintiff was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal work-day and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 517-18.) Ultimately, Dr. Anderson opined that Plaintiff's limitations in sustaining

9

concentration, persistence and pace at complex or stressful tasks were not substantial limitations. (R. at 519.) The ALJ gave great weight to Dr. Anderson's opinion and explicitly discussed the mental limitations therein. (R. at 20-21.)

The ALJ discussed the opinions of Dr. Roth, Dr. Kawaja and Dr. Anderson in his written decision. (R. at 20-21.) In doing so, the ALJ sufficiently developed the record regarding Plaintiff's moderate limitation in persistence, concentration and pace. And substantial evidence supports the ALJ's findings regarding Plaintiff's mental limitations. Furthermore, the ALJ appropriately addressed Plaintiff's limitations in his RFC findings by restricting Plaintiff to "low stress jobs" — jobs not performed at an assembly-line pace, with few workplace changes, little independent decision-making and no responsibility for the safety of others. The ALJ then properly incorporated Plaintiff's RFC into the hypothetical questions posed to the VE. Therefore, the ALJ did not err.

### B. The ALJ did not err in finding that Plaintiff did not meet Listing 12.05C for intellectual disability.

Plaintiff argues that the ALJ erred by failing to find that Plaintiff meets Listing 12.05C of 20 C.F.R. Part 404, Subpart P, Appendix 1. (Pl.'s Mem. at 30-32). Defendant responds that Plaintiff did not meet her burden of demonstrating that she meets Listing 12.05C. (Def's Mem. at 16-18.)

At step three of the sequential analysis, the ALJ must determine whether Plaintiff's impairment or combination of impairments is severe enough to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P., Appendix 1. 20 C.F.R. §§ 416.920(d), 416.925, 416.926. The claimant bears the burden of proving that she meets or equals a listing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). "For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria. An

impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990.)

To meet Listing 12.05C, the claimant must establish that her impairment satisfies both the diagnostic description in the introductory paragraph of Listing 12.05 and the criteria provided in paragraph C. 20 C.F.R. pt. 404, subpt. P, app.1, § 12.05. Specifically, Plaintiff must demonstrate: (1) "significantly sub-average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22," and (2) "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. " 20 C.F.R. pt. 404, subpt. P, app.1, § 12.05C. Plaintiff argues that she meets the requirements for Listing 12.05C, because: (1) Dr. Roth found Plaintiff's valid full scale IQ to be 70; (2) Plaintiff's intellectual deficits existed before the age of twenty-two; and, (3) Plaintiff's physical conditions significantly limited her work-related functions. (Pl.'s Mem. at 30-31.)

Here, the ALJ found that Plaintiff did not meet any of the listed impairments. (R. at 13.) With regard to the listings for mental impairments, the ALJ discussed Listings 12.04 (affective disorders) and 12.06 (anxiety related disorders) (R. at 14-15), but did not mention Listing 12.05 (intellectual disability). Regardless, the Court finds that the ALJ's step three assessment does not warrant a remand, because he sufficiently explained the basis of his decision and substantial evidence in the record supports the decision.

First, the ALJ's decision provides this Court with a sufficient basis to engage in substantial evidence review. The ALJ noted that Plaintiff reported no problems performing personal care and preparing meals. (R. at 15.) The ALJ noted that Plaintiff took care of her

11

daughter, performed household chores and enjoyed socializing with others. (R. at 15.) Further, the ALJ found that even though Plaintiff attended school only through the tenth grade, she reported having dropped out due to a lack of interest in school and having earned her GED. (R. at 21.) The ALJ also discussed Dr. Roth's examination of Plaintiff in detail. (R. at 18-20.) The ALJ acknowledged that Dr. Roth found Plaintiff's full scale IQ to be 70. (R. at 19.) But the ALJ noted that Dr. Roth opined that Plaintiff's fatigue at the time of examination likely affected the result. (R. at 19.) The ALJ reiterated Dr. Roth's opinion that Plaintiff's ability to adhere to a normal work schedule and maintain an adequate pace in a work setting depended on her medical condition. (R. at 20.) The ALJ then gave significant weight to Dr. Roth's opinion, because it was consistent with Plaintiff's longitudinal record. (R. at 20.) Even though the ALJ did not specifically discuss Listing 12.05C, the ALJ sufficiently explained his decision that Plaintiff did not meet any of the listings for mental impairments.

Plaintiff's medical records support the ALJ's conclusion. During Dr. Khawaja's March 1 and March 27, 2012 evaluations, Plaintiff demonstrated "abnormal and markedly impaired" neurocognitive test results. (R. at 610.) Plaintiff showed impairments across all neurocognitive domains, except that she had a fully normal range of executive functioning abilities.[4] (R. at 610.) Dr. Khawaja invalidated Plaintiff's personality functioning test due to the high level of response inconsistencies. (R. at 610.) Dr. Khawaja opined that the results showing impaired neurocognitive functions did not accurately reflect her true abilities, because otherwise she could not perform her self-reported activities, such as driving or taking care of her young daughter. (R.

---

[4] Executive function skills are "the mental processes that enable [people] to plan, focus attention, remember instructions and juggle multiple tasks successfully." *Executive Function & Self Regulation*, Harvard University Center for the Developing Child, http://developingchild.harvard.edu/science/key-concepts/executive-function/ (last visited Nov. 12, 2015.)

at 610.) Dr. Khawaja diagnosed moderate depression and severe anxiety, but deferred any diagnosis of cognitive difficulties. (R. at 611.)

Plaintiff's own statements also support the ALJ's finding. On August 31, 2010, Plaintiff completed a function report. (R. at 209.) Plaintiff stated that she took care of her young daughter. (R. at 209.) She prepared meals daily and could perform household chores, such as vacuuming, doing laundry and washing dishes. (R. at 209.) She went outside daily and could drive a car. (R. at 212.) She could follow written and spoken instructions. (R. at 214.) She could count change, handle a savings account and use a checkbook and money orders. (R. at 212.) During her February 11, 2011 evaluation with Dr. Roth, Plaintiff stated that she took care of her daughter and performed household chores. (R. at 488.) She also stated that she could manage her money and pay bill independently. (R. at 488.)

Because the ALJ sufficiently explained the basis of his step three assessment and substantial evidence in the record supports his decision, the Court finds that the ALJ did not err.

### C. The ALJ properly assessed Plaintiff's credibility.

Plaintiff argues that the ALJ erred by discrediting Plaintiff's subjective complaints and ultimately formulating erroneous RFC findings. (Pl.'s Mem. at 32-34.) Plaintiff argues that the ALJ erred by diminishing her credibility based on her self-reported ability to perform housework, because her statements actually show that she could not maintain a normal pace during tasks. (Pl.'s Mem. at 32.) Defendant responds that the ALJ reasonably considered Plaintiff's daily activities to assess Plaintiff's credibility and that substantial evidence supports his credibility assessment. (Def.'s Mem. at 18-21.)

When determining the claimant's RFC, the ALJ must incorporate impairments supported by the objective medical evidence in the record and those based on the claimant's credible

complaints. 20 C.F.R. §§ 404.1545(a)(3), 404.1545(e). In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ must first determine whether the claimant's underlying medically determinable physical or mental impairments that could reasonably produce her pain or other related symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b). If, and only if, the ALJ finds that the claimant's underlying impairments reasonably could be expected to produce her pain and symptoms, the ALJ then must evaluate the claimant's statements about the intensity and persistence of her pain and the extent to which it affects her ability to work. *Craig*, 76 F.3d at 595 (citing 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1)).

This Court must give great deference to the ALJ's credibility determinations. *Eldeco, Inc. v. N.L.R.B.*, 132 F.3d 1007, 1011 (4th Cir. 1997). "When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent exceptional circumstances." *Id.* (quoting *N.L.R.B. v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)) (internal quotation marks omitted). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." *Id.* (citations omitted).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (R. at 17.) The ALJ considered her daily activities to assess the credibility of her alleged complete inability to work and found that the record does not support such allegation. (R. at 21.) The ALJ found that Plaintiff's routine and conservative medical treatments and good self-reported activities

14

diminish her credibility regarding the frequency and severity of her symptoms. (R. at 20.) The Court finds that substantial evidence supports the ALJ's credibility assessment.

Plaintiff's medical records support the ALJ's credibility assessment. On October 27, 2008, Gregory Uhl, M.D., a cardiologist, examined Plaintiff during a follow-up appointment for chest pain. (R. at 270.) Plaintiff was alert, oriented and in no apparent distress. (R. at 270.) Plaintiff's heart and lungs were normal. (R. at 270.) Other physical examination findings were unremarkable. (R. at 270.) Dr. Uhl ultimately opined that Plaintiff's chest pain had resolved. (R. at 270.)

On January 11, 2010, Plaintiff was admitted to the Satilla Regional Medical Center for syncope episodes. (R. at 359.) Jules Nehmetallah, M.D. examined Plaintiff before she returned home on January 14, 2010. (R. at 359, 361.) Dr. Nehmetallah noted that Plaintiff remained asymptomatic during her stay. (R. at 360.) A treadmill stress test did not reveal any significant abnormalities. (R. at 360.) Except for her high blood pressure, Plaintiff left the hospital in stable condition. (R. at 361.)

On February 10, 2010, Plaintiff saw Harsh Singh, M.D., a neurologist, complaining of headaches. (R. at 288.) Dr. Singh's physical examination yielded unremarkable results. (R. at 289-90.) Plaintiff denied neck or back pain. (R. at 289.) Her heart and lungs were clear. (R. at 289.) Plaintiff was awake, alert and oriented. (R. at 290.) Her coordination, motor system and gait were normal. (R. at 290.) Her neurological examination was normal. (R. at 290.) On September 7, 2010, Plaintiff returned to Dr. Singh for a follow-up. (R. at 483.) Dr. Singh noted that Plaintiff was not in any physical distress. (R. at 484.) A physical examination showed unremarkable results. (R. at 484.) Plaintiff's headaches were under good control, responding well to medications. (R. at 484.) On May 3, 2011, Plaintiff reported to Dr. Singh that she had

not experienced any seizure for more than a year. (R. at 542.) Plaintiff reported that she continued having headaches, but the symptoms responded well to medications. (R. at 542.) Dr. Singh noted that Plaintiff's energy levels were good. (R. at 542.) Plaintiff denied any pain or aches in her eyes, ears, nose or throat. (R. at 542.) Plaintiff had a normal gait and intact movements. (R. at 543.)

On February 3, 2012, Plaintiff saw Graham Powers, III, M.D., a family medicine specialist, for her seizure disorder. (R. at 585.) Dr. Powers noted that Plaintiff was tolerating medications well without side effects. (R. at 585.) A physical examination showed normal results. (R. at 587.) On June 5, 2012, Plaintiff saw Dr. Chi-Kin Ng, M.D., a neurologist, for her seizure disorder. (R. at 632.) Her physical and neurological examinations yielded normal results. (R. at 633.) Plaintiff had normal motor strength and a normal gait. (R. at 627.)

Plaintiff's own statements also support the ALJ's decision. In her August 31, 2010 function report, Plaintiff stated that she performs household chores, such as vacuuming, laundry and washing dishes. (R. at 211.) She left the house every day, and when she did, she rode or drove a car. (R. at 212.) She could handle stress and changes in routine well. (R. at 215.) During her February 11, 2011 evaluation with Dr. Roth, Plaintiff stated that she could complete basic personal hygiene. (R. at 488.) Plaintiff could drive herself to most appointments. (R. at 488.) Plaintiff enjoyed socializing with family members. (R. at 488.) Therefore, substantial evidence supports the ALJ's credibility assessment.

V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No.13) be DENIED, that Plaintiff's Motion for Remand (ECF No. 14)

be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 17) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: February 12, 2016